```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
THE RICE COMPANY,                                                 :
                                                                  :
                                  Petitioner,                     :    12 Civ. 0497 (JMF)
                                                                  :
              -v-                                                 :    OPINION AND ORDER
                                                                  :
                                                                  :
PRECIOUS FLOWERS LTD and                                          :
THE GOVERNMENT OF PERU,                                           :
                                                                  :
                                  Respondents.                    :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/5/2012

JESSE M. FURMAN, District Judge:

      This case relates to two arbitration proceedings arising out of a single shipment of wheat from Texas to Peru.  In the first arbitration proceeding, Precious Flowers Limited ("Precious Flowers") seeks to recover money from The Rice Company ("TRC").  In the second, TRC seeks to recover from the Government of Peru ("Peru") any money it is required to pay Precious Flowers as a result of the first arbitration.  Although all three parties have appeared in the arbitration proceedings, and the rules governing those proceedings call for consolidation of proceedings that "arise in substantial part from the same maritime transactions," Peru has thus far refused to consent to consolidation.  In light of that refusal, TRC — the one party common to both arbitration proceedings — filed a petition in this Court seeking to compel consolidation.

      Complicating matters, Peru has not appeared in this action; although TRC served its petition on the counsel that represents Peru in the second arbitration proceeding, that counsel maintains that it is not authorized by Peru to accept service for purposes of these proceedings. Complicating matters further, the first arbitration proceeding — between Precious Flowers and

TRC — now has a full panel of arbitrators in place and is underway. In light of this latter development, TRC has filed an application with this Court for a stay of the arbitration proceeding pending a decision by the Court on the petition to consolidate. (*See* Pet'r's May 17, 2012 Letter Brief ("Pet'r's 5/17 Ltr") (Docket No. 11)).[1] For the reasons stated below, TRC's application for a stay is denied.

## BACKGROUND

Precious Flowers is a Thai corporation and the owner of the cargo vessel, the M/V NALINEE NAREE. (*See* Pet. to Consolidate Arbitrations ¶ 5 (Docket No. 1); *id.*, Ex. 1). On October 2, 2004, Precious Flowers and TRC, an international trader of agricultural commodities, signed a time charter party in which Precious Flowers agreed to let TRC hire the M/V NALINEE NAREE for a period of approximately six months. (*See id.* ¶ 4; *id.*, Ex. 1). On October 18, 2004, TRC entered into a separate charter party with Peru. (*See* Resp't's May 23, 2012 Letter Brief ("Resp't's 5/23 Ltr") Ex. B, at 19 (Docket No. 13)).[2] Each charter party included a broad arbitration clause referring any disputes arising out of, or in connection with, the contract to a

---

[1] In a separate letter brief dated May 22, 2012, TRC maintains that it has properly served Peru and asks the Court to issue an order that the service upon Peru's counsel in the arbitration proceedings be deemed sufficient for these proceedings. (*See* Pet'r's May 22, 2012 Letter Brief ("Pet'r's 5/22 Ltr") at 5 (Docket No. 12)). The Court is skeptical that TRC has properly served Peru in accordance with the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608. Nevertheless, the Court need not, and does not, reach the issue at this time.

[2] Strictly speaking, TRC and Peru signed an addendum to an earlier executed time charter party substituting the M/V NALINEE NAREE for the originally named vessel. Curiously, although the addendum expressly incorporates by reference a charter party between TRC and Peru signed on October 1, 2004, the charter party upon which TRC relies in its petition is dated September 21, 2004. (Pet. Ex. 2). As there appears to be no dispute that the charter party agreement between TRC and Peru required arbitration in accordance with the Rules of the Society of Maritime Arbitrators, the Court assumes that the addendum was either incorrect with respect to the date of the incorporated charter party or that there is no material difference between the charter party referenced in the petition and the charter party referenced in the addendum.

three-person tribunal in New York.  (*See* Pet. Ex. 1 ¶ 65; *id.*, Ex. 2 ¶ 47).  In each agreement, the parties agreed that the proceedings would be conducted in accordance with the Rules of the Society of Maritime Arbitrators ("SMA").  (*See id.*).

In November 2004, when both charter party contracts were in effect, the M/V NALINEE NAREE transported a cargo of wheat from Houston, Texas, to Matarani, Peru.  (*See* Pet. Ex. 2).  After the voyage, cargo claimants sued Precious Flowers in Peru alleging contamination and short delivery of the wheat.  In mid-2011, Precious Flowers settled the case for $174,964.31.  (*See* Resp't's 5/23 Ltr at 2).  Seeking partial reimbursement of this amount, Precious Flowers sent a letter to TRC in October 2010 demanding the commencement of arbitration in accordance with the SMA Rules.  (*See id.* at 2-3).  Precious Flowers and TRC each selected an arbitrator, but before the two arbitrators selected a third arbitrator to serve as panel chairperson, TRC commenced a separate arbitration against Peru seeking to recover any damages that might result should TRC be found liable to Precious Flowers in the first arbitration.  (*See id.*).  Peru consented to arbitration.  (*See* Pet. ¶ 11 (noting that Peru appointed a SMA arbitrator in response to TRC's demand for arbitration)).

On November 2, 2010, after TRC and Peru had each chosen an arbitrator in the second arbitration proceeding, but again before a panel chairperson had been selected, TRC took the position that the two arbitration proceedings should be consolidated pursuant to the SMA Rules.  (*See id.* at 3).  Section 2 of the SMA Rules provides, in relevant part:

> The parties agree to consolidate proceedings relating to contract disputes with other parties which involve common questions of fact or law and/or arise in substantial part from the same maritime transactions or series of related transactions, provided all contracts incorporate SMA Rules. . . . Unless all parties agree to a sole Arbitrator, consolidated disputes are to be heard by a maximum of three Arbitrators to be appointed as agreed by all parties or, failing such agreement, as ordered by the Court.

SMA Rules § 2.  Precious Flowers indicated that it was amenable to the proposed consolidation.  (*See* Resp't's May 2, 2012 Letter Brief ("Resp't's 5/2 Ltr") at 2 (Docket No. 10)).  Peru, however, opposed consolidation.  (*See* Resp't's 5/23 Ltr Ex. D).  In an e-mail dated December 19, 2011, to counsel for TRC and Precious Flowers (among others), counsel for Peru stated that because "Peru has no contractual agreement with Precious Flowers, it cannot be compelled to participate with such a non-party in arbitration. . . .  No specific demonstration the authority [*sic*] and purpose of consolidation has been made."  (*Id.*)

Instead of seeking relief through the arbitration proceedings themselves, TRC filed its Petition to Consolidate Arbitrations with this Court on January 20, 2012.  (*See* Pet.).  TRC served the petition on Precious Flowers.  TRC also sent the petition to Peru's counsel in the arbitration proceeding, but that counsel advised TRC that it was not authorized to accept service on Peru's behalf and Peru has not appeared in this action.  (*See* Resp't's 5/23 Ltr at 3).  In the meantime, on March 16, 2012, concerned that resolution of the petition would unduly delay its arbitration proceeding with TRC, Precious Flowers wrote to the two-member panel in that arbitration urging it to select a chairperson and to proceed.  (*See id.*, Ex. E).  The panel agreed and that arbitration is now underway.  (*See id.*, Ex. F).

On May 7, 2012, TRC and Precious Flowers appeared for a conference before this Court.  At the conference, the Court expressed its view that the question of consolidation was better raised with the SMA, especially in light of the fact that Peru had not appeared in these proceedings.  The Court gave TRC until May 21, 2012, to serve Peru with the petition in accordance with Title 28, United States Code, Section 1608.  TRC did not do so.  Instead, it submitted a letter dated May 22, 2012, explaining that it would take up to six months to serve Peru and arguing that service on Peru's counsel in the arbitration proceeding should be deemed

sufficient. (*See* Pet'r's 5/22 Ltr). By letter dated May 17, 2012, TRC also sought to stay the arbitration proceeding with Precious Flowers pending the Court's decision regarding its petition to consolidate the arbitrations. (*See* Pet'r's 5/17 Ltr). Precious Flowers opposes the stay. (*See* Resp't's 5/23 Ltr).

## DISCUSSION

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The Court must consider four factors when deciding whether to exercise its discretion and stay an arbitration:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 427 (citation omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Id.* at 433-34.

In the present case, TRC has failed to show that any of the four factors support the granting of a stay. First and foremost, TRC has not made a showing, let alone a "strong showing," that it is likely to succeed on the merits of its petition. In fact, TRC's petition is almost certainly bound to fail because the law appears well established that the question of consolidation is for the arbitrators, not a court, to decide. Second, TRC has not shown that it will be irreparably injured absent a stay, especially in light of the weakness of its case on the merits.

Finally, a stay would harm Precious Flowers — which has already, and through no fault of its own, had to endure delay in obtaining resolution of its claim against TRC — and would not be in the public's interest.

## A. Success on the Merits

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides, in relevant part, that a "written provision in any maritime transaction" that calls for the arbitration of a controversy arising out of that transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To that end, the FAA permits a party to an arbitration agreement to petition a United States District Court for an order directing that the "arbitration proceed in the manner provided for in [the] agreement." *Id.* § 4. "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. —, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Indeed, the FAA establishes "a liberal federal policy favoring arbitration agreements. . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

In light of this policy, the role of a court is limited when there is an arbitration clause at issue. The "question of arbitrability" — that is, whether the matter is subject to arbitration at all — "is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citations and quotation marks omitted). But "the phrase 'question of arbitrability'" has a "limited scope" and does not apply to every "gateway question," even if "potentially dispositive." *Id.* Indeed, the phrase applies only in "narrow circumstance[s]," such as when the dispute concerns "whether

6

the parties are bound by a given arbitration clause" or whether "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* at 83-84.  By contrast, "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide."  *Id.* at 84 (emphasis in original) (internal citation and quotation marks omitted); *see also id.* at 85 ("'[I]n the absence of an agreement to the contrary, . . . issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.'") (quoting the Revised Uniform Arbitration Act of 2000, § 6, cmt. 2, 7 U.L.A. at 13).

Applying these principles, courts have uniformly held that, absent a clear agreement to the contrary, the question of whether arbitration proceedings should (or should not) be consolidated is a procedural matter to be decided by the arbitrators, not by a court.  *See, e.g., Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011); *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 582 (3d Cir. 2007); *Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, Local 791*, 321 F.3d 251, 254 (1st Cir. 2003); *Avon Prods. Inc. v. UAW, Local 710*, 386 F.2d 651, 658-59 (8th Cir. 1967); *Safra Nat. Bank of New York v. Penfold Inv. Trading, Ltd.*, No. 10 Civ. 8255 (RWS), 2011 WL 1672467, at *5 (S.D.N.Y. Apr. 20, 2011); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 462, 477 (S.D.N.Y. 2010); *In re Allstate Ins. Co. and Global Reinsurance Corp.*, 06 Civ. 4419 (DAB), 2006 WL 2289999, at *1 (S.D.N.Y. Aug. 8, 2006); *Blimpie Int'l Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 473-74 (S.D.N.Y. 2005).  As the Court explained in *Blimpie International*:

> Consolidation does not fall within the narrow exception reserved for gateway matters that the parties would likely have expected a court to resolve. . . .  [T]he

> question of consolidated arbitration . . . concerns the nature of the arbitration proceeding agreed to, not whether the parties agreed to arbitrate.  Indeed, consolidation is a procedural issue, which grows out of the parties' dispute, and therefore, presumptively falls to the arbitrator.

*Blimpie Int'l Inc.*, 371 F. Supp. 2d at 473-74 (internal quotation marks, citations, and brackets omitted).

In light of this clear and overwhelming authority, TRC's petition is almost certainly doomed to failure because whether the two arbitration proceedings in this case — between Precious Flowers and TRC and between TRC and Peru — should be consolidated is a question for the arbitrators, not for this Court.  Although a "gateway question" in the sense that it comes near the beginning of the arbitration proceedings, the question of consolidation "concerns the nature of the arbitration proceeding agreed to, not whether the parties agreed to arbitrate . . . and therefore, presumptively falls to the arbitrator." *Id.*  Moreover, the question turns on the SMA's own rules.  As the Supreme Court explained in *Howsam*, when a dispute concerns the arbitrator's own rule, "it is reasonable to infer that the parties intended" their agreement to reflect the understanding that the arbitrators, "comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it."  *Howsam*, 537 U.S. at 86.  Additionally, "for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy — a goal of arbitration systems and judicial systems alike."  *Id.*

To be sure, Section 2 of the SMA Rules does expressly contemplate some court involvement in the consolidation of arbitration proceedings.  *See* SMA Rules § 2 ("Unless all parties agree to a sole Arbitrator, consolidated disputes are to be heard by a maximum of three Arbitrators to be appointed as agreed by all parties *or, failing such agreement, as ordered by the Court*.") (emphasis added).  That provision, however, does no more than provide a judicial

8

remedy if the parties to consolidated proceedings cannot agree on the panel members for those proceedings — a remedy also made available by the FAA itself.  *See* 9 U.S.C. § 5.  Section 2 of the SMA Rules does not suggest that the parties intended for a court to decide the issue of whether separate arbitrations should be consolidated in the first instance — and it certainly does not provide as much "clearly and unmistakably."  *Howsam*, 537 U.S. at 83 (internal quotation marks omitted).  Accordingly, the reference to "the Court" in Section 2 does not overcome the presumption that "parties to an arbitration contract would normally expect a forum-based decisionmaker to decide forum-specific procedural gateway matters."  *Id.* at 86.

## B.  Irreparable Harm

TRC has also failed to show that it would be irreparably injured absent a stay.  In its letter seeking a stay, TRC maintains that it risks irreparable harm due to (1) the risk of disparate awards; (2) the risk of an adverse ruling granting relief to Precious Flowers that is not ultimately recoverable; (3) the risk of unanticipated changes and developments that would render the present application moot; and (4) the potential costs and fees associated with two separate arbitrations.  (*See* Pet'r's 5/17 Ltr at 3).  These forms of injury, however, are either insufficient as a matter of law or too speculative.

First, to the extent that TRC relies on the potential costs and fees of two arbitration proceedings, it is well settled that "[t]he monetary cost of arbitration . . . does not impose [a] legally recognized irreparable harm."  *Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93 (2d Cir. 1986); *accord Woodlawn Cemetery v. Local 365, Cemetery Workers and Greens Attendants Union*, No. 90-6071, 1990 WL 150472, at *3 (S.D.N.Y. 1990).  As for TRC's other claims of injury, the Court need not decide whether they would otherwise qualify as irreparable harm, because they are too speculative to justify a stay.  *See, e.g.*, *U.S. ex rel. Anti-*

*Discrimination Center of Metro New York, Inc. v. Westchester County*, No. 06 Civ. 2860 (DLC), 2012 WL 1758109, at *3 (S.D.N.Y. May 17, 2012) ("An irreparable injury is 'an injury that is neither remote nor speculative, but actual and imminent . . . .'") (quoting *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  As discussed above, TRC may raise the issue of consolidation with the arbitrators, and they may well grant TRC the relief it seeks.  Moreover, to the extent that TRC believes it will suffer injury if the first arbitration proceeds while the consolidation issue is being decided, it can raise that concern with the arbitrators as well.  In other words, TRC has failed to establish that it is unable to gain all the relief it seeks here from the arbitrators themselves.

Accordingly, TRC has failed to establish an actual and imminent irreparable harm.  In light of the weakness of its case on the merits, this failure is especially significant, as the amount of irreparable injury a plaintiff must demonstrate it will suffer absent a stay is inversely proportional to the probability of its success on the merits.  *See Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002).  "Simply stated, more of one excuses less of the other."  *Id.* (citation omitted).  Here, given the very low probability of success on the merits, TRC would have to demonstrate tremendous injury to justify a stay.  It has not done so.

**C.  Harm to Other Parties and Public Interest**

Finally, although "[t]he first two factors of the traditional standard are the most critical," *Nken*, 556 U.S. at 434, the remaining factors also weigh against a stay in this case.  Precious Flowers properly availed itself of the arbitration clause in its charter party with TRC and had reason to believe its dispute would be quickly and efficiently resolved through arbitration.  Through no fault of its own, Precious Flowers has already suffered a delay in that proceeding; delaying it still further would compound the harm to Precious Flowers.  *See, e.g.*, *Mendez v.*

*Skymax Dominica, S.A.*, No. 11 Civ. 7548 (DLC), 2011 WL 6413608, at *1 (S.D.N.Y. Dec. 13, 2011) ("It is in the defendant's interest to proceed to arbitration without further delay . . . ."). Further, in light of the "strong public interest favoring arbitration," *id.*, the public's interest also favors proceeding promptly with the arbitration proceedings, whether consolidated or not.

## CONCLUSION

Because TRC has failed to show that an exercise of the Court's discretion is warranted under these circumstances, its application for a stay is denied.  Furthermore, because the Court's resolution of TRC's application for a stay casts considerable doubt on the continued viability of its petition to consolidate, the Court invites TRC to submit a memorandum of law, not to exceed 10 pages, by June 15, 2012, showing cause why the petition should not be denied and the case dismissed *sua sponte*.  If TRC fails to file a memorandum of law, the petition will be denied and the case dismissed *sua sponte* without further notice to the parties.  If TRC does file a memorandum of law, Precious Flowers shall have until June 22, 2012, to file a reply, not to exceed 10 pages.  Finally, in light of the foregoing, the status conference scheduled for June 13, 2012, is hereby canceled and the parties are no longer required to submit status letters to the Court by June 8, 2012.

SO ORDERED.

Dated: June 5, 2012
      New York, New York

                                                        JESSE M. FURMAN
                                               United States District Judge